### KENNER & AL. vs. THEIR CREDITORS.

MARTIN, J. delivered the opinion of the court. A re-hearing has been prayed, by the appellees, opposing creditors of the claim of the *Bank of the United States*, on a judgment we delivered in this case a few weeks ago, on the ground that we erred:

1. In considering the bills, holden by the Bank, as duly accepted and protested.

2. In omitting to notice the objection that the Bank lost its recourse against the insolvents, in consequence of sundry arrangements and transactions with the acceptors.

The arguments, in the petition, present sub-

stantially nothing, that had not been offered,
on the hearing, or in the brief, with which the appellees' counsel favored us, all which,
in one opinion, was victoriously answered by the counsel for the Bank. On this point, therefore, no re-hearing could be granted.

Before we proceed to examine the second point, it is due to the parties, in favor of whom a re-hearing was solicited, to notice two of the grounds on which the application was made, The errors, into which the counsel have fallen, appear to us very great; the facts are entirely mistated, and on matters too, on which it is strange, the gentlemen could have been mistaken.

In the judgment, we said, "But the appel lants' counsel urge, that they proved by witnesses, in each case, the day of acceptance, and from a comparison of the tenor of the bills, the day of acceptance, and that expressly designated for payment, it clearly appears that both the days of sight and those of grace were included in the period between the day of acceptance and the one expressly designated as that of payment."

On this, the petition observes: "This argu-

Eastern Dist.
*May*, 1829.

KENNER
& AL.
*vs.*
their credit's.
ment, as far as we recollect, was never made, and could not, with any degree of propriety, have been made, at the bar, for these plain reasons:

"1. The appellants' counsel could not say, they had proved by witnesses, the day of acceptance; they had attempted, it is true, to prove it, by witnesses; but the attempt had been resisted by us, and the court below had refused to admit the evidence offered, therefore, no body knew what the evidence was, nor what fact could be established; therefore nothing was proved by witnesses, and therefore the appellants could not say it was.

"2. The only question before the court was, as to the admissibility of oral evidence to prove the date. Until the decision of this preliminary question, we could not, nor could any of the parties, nor could the court say the proof was made of the date of the acceptance."

There is on the record an agreement, signed by the counsel of both parties, by which the case is submitted "on the returns to the commissions taken to Liverpool and London .... but the said evidence is subject to all objections, and its admissibility is expressly reserved,

as well as the right to object to the admissibil-
ity of any parol evidence on the subject of
these bills of exchange. On the appeal, the
records may be made up of the tableau and
oppositions only. The evidence, under the
commissions, may be taken up in original, sub-
ject to the above exceptions."

This agreement, far from shewing the evi-
dence was *rejected*, in consequence of a legal
exception, shews that it was *admitted*, subject
to such exceptions.

The difference, between the two modes of
bringing a case before the court, is familiar to
the youngest member of the bar, and their
effect is quite dissimilar. In many cases, per-
haps in the greatest number, parties raise the
question on the admissibility of the evidence,
in the lower court; and if illegal, it is rejected.
This is the most regular mode: in such a case
the evidence does not appear on the record,
and cannot be noticed by the upper court.—
But this course has often the effect of retarding
a final decision; for, when the opinion of the
supreme court differs from that of the judge
*a quo*, the case must be remanded to let in the
proof. To avoid this, parties, who are anxious

Eastern Dist.
*May*, 1829.

KENNER
& AL.
*vs.*
their credit's.
for a decision on the merits, admit the evidence, subject to all legal objections, as was done here.

It has been uniformly understood, and never till now doubted, that when the evidence comes up in this manner, this court, if it judges the evidence legal, proceeds to inquire into its effect. The consent of the parties brings the evidence before us, in the same manner, as if it had been admitted below by the judge, notwithstanding an objection to its introduction.

The cousel of the appellants, therefore, with great propriety argued, in the argument, first the legality of the proof, then assuming it to be admissible, contended that it established the dates of the acceptances. This court, consequently did not err in stating that, "the counsel urged that they had proved, by witnesses, in each case, the day of acceptance."

It is not the practice in this court, when a case comes before it, as this did, for the counsel first to discuss the legality of the proof, and after obtaining a favourable decision, to argue on the effect of the proof. The whole case is submitted at once, and all the points it pre-

sents are made.   If the court deem the evi- dence illegal, it rejects it,  otherwise it acts on it, and the case is decided on its merits.  What is usual in all other  cases, what is right in every case similarly circumstanced, was done in this, and nothing  authorized the  assertion that  the proof of the day of acceptance was not  before this  tribunal; that it was not commented on, and  duly and properly taken into consideration, in our judgment.

The next point, on which we deem it material  to  undeceive the parties, is the decision in the case of the claim of *Hicks, Lawrence & Co.*  The counsel of the present, who were those  of the then,  appellees,  now state the judgment of the  parish court, on that claim, was not appealed from,  the case was not before us, and how we could act on it, the counsel  profess they do not know.   Had the gentlemen, who  subscribed the petition for a rehearing, bestowed  a moment's consideration on their own conduct, during the hearing of the case of *Hicks, Lawrence & Co.* and afterwards, they would have found an easy and immediate relief from the surprise, which our pronouncing judgment on it, excited.   That

Eastern Dist.
May, 1829.

KENNER
& AL.
vs.
their credit's.
judgment was rendered, because the case was solemnly argued, both orally and in writing by them, and orally by the opposite counsel, as if a petition of appeal had been actually filed; the testimony, taken in relation to the very bill on which the claim was founded, had been brought up, made a part of our record, and as such, was read, commented on, and submitted to us. Not a suggestion was made, during the argument or after, that the case was not regularly befor us.

By the agreement of parties, the record, on appeal, was to be made of the tableau and opposition only; the evidence was to be taken up in the original. We were, therefore disabled to detect the informality suggested, if it exists. Whether the case was legally before us or not—whether a petition of appeal, bond, citation, &c. might not be dispensed with by consent, or the want of these or any of them, under all the circumstances of the case, cured by appearance, argument and trial on the merits—whether the judgment may be set aside or its execution resisted, on an exception—whether the conduct of the counsel requires our interference or not; it suffices that we

may be resorted to for relief, to render any
positive expression of our opinion improper.
In the absence of the party, in whose favor that
judgment was rendered, its validity cannot be
the subject of our enquiry.

Had we committed an error, as is sugges-
ted, it would have been one, into which we
should have been led by implicit confidence
in the character and truth of gentlemen of
high standing at the bar; a confidence, which
tho' this court may be compelled to abandon—
it will painfully and unwillingly relinquish.   It
could not have occurred to us, that persons, of
the description just stated, would argue, both
orally and in writing, the merits of a case, in
which no appeal had been taken, unless under
a strong obligation, subsequently to supply or
wave any defect, in the manner of bringing up
the case.   Such was the reliance, placed by us
in the ability and industry of those gentlemen,
that we did not deem it necessary to inquire
whether a petition of appeal was formally
placed on the record, and least of all, could
we have supposed, that the persons, who ar-
gued a cause, as pending before us, after they

Eastern Dist.
*May*, 1829.

KENNER
& AL.
*vs.*
their credit's.
found our judgment, unfavorable, would assert we had acted on a case not before us.

Upon the whole, we must consider the statement, in the petition, for a re-hearing as to the impropriety of our regarding the judgment on the claim of *Hicks, Lawrence & Co.* to be entirely gratuious; the authority of that decision must be the same, on the legal question, whether there was a petition of appeal or not. It is the opinion of the highest tribunal in the state, after hearing the parties, and its force and truth cannot be strengthened, or weakened, by any informality in bringing the appeal before us.

II. Our opinion is, that our attention was not drawn, during the hearing, to the discharge of the insolvents, on account of an arrangement or transaction between the Bank and the acceptors. The petition asserts that it was—and that we desired the counsel of the appellees to postpone any observation, on that head, till after our decision on the legality of the acceptances and protests. On this assertion, notwithstandlng neither of us has any recollection on the subject, we concluded that we said so, or were misunderstood. We there-

fore, granted, the re-hearing on this second point.

Eastern Dist.
*May* 1829.

KENNER
& AL.
*vs.*
their credit's.

It has been contended that the case ought to be remanded, because the parish judge did not speak in his judgment of the objection to the claim of the Bank, resulting from this real or allegal discharge.

It is obvious that this is not a sufficient cause to authorize us to refuse to act, on the whole case. The court below decides a cause, on whatever point it deems material: our duty is to revise its judgment, not the grounds on which it is rendered. Its decision on the merits, requires, nay compels us, to examine the case, on all the grounds which it presents, if that be necessary to a rightful determination of the case; for the error of the judge *a quo*, for which relief is sought at our hands, may be his failure to take into consideration, an objection, on which his judgement is silent. Under the principle contended for, there might be as many appeals, as points in a cause, if he acted on one only at a time, and decided erroneously. It has been the uniform practice of this tribunal, as it is the real intent of the statute, that the decision of the first judge on the mer-

Eastern Dist.
*May*, 1829.

KENNER
& AL.
*vs.*
their credit's.

its, brings up the whole case. The contrary doctrine would be productive of intolerable expense and delay.

The first piece of evidence, from which the loss of the recourse of the bank, on the insolvents, is inferred, is an agreement entered into on the 16th of November, 1825, by Brown, as agent of the bank, with the acceptors, of which he promised to procure the ratification by the bank, within a given period.

Without admitting, either that this agreement could have any effect, without the concurrence of other parties, or that, if binding on the bank, the discharge of the insolvents would follow, its counsel has contended that it is not bound, because the agreement was entered into without its authority, was never expressly or impliedly ratified, and every act of the bank, after the agreement came to its knowledge, manifested its unwilliness to be bound by it.

This throws on the appellees the burden of proving Brown's authority. The evidence of this authority, resulting from his possession of the bills, for the bank, might establish his authority to receive payment, but not that of compromising its rights.

There is no proof of any communication Eastern Dist.
*May*, 1829.

KENNER
& AL.
*vs.*
their credit's.
from Brown to the bank, nor any knowledge
brought home to that institution; no implied
ratification can be presumed.

No express one, is alleged.

It therefore follows that the bank is not
bound by this agreement, and its recourse a-
gainst the insolvents is not thereby impaired.

The next piece of evidence, from which the
loss of the recourse is inferred, is Brown's re-
ceipt, as attorney of the bank, for dividends
of the estate of the acceptors. It is unneces-
sary to inquire whether the receipt had the
pretended effect—for, if it had, the bank is
not bound thereby, as the money was received,
under a power, from which the authority of
doing any act, affecting the recourse, was
expressly excepted.

Finally, it has been urged, the cause should
be remanded, because it must be presumed
Brown informed the bank of the agreement,
he had entered into in their behalf, previous
to the receipt of the power, and if the cause
was again before the tribunal of the first in-
stance, evidence could be given to that effect
This demand is addressed to the discretion of

Eastern Dist.
*May*, 1829.

KENNER
& AL.
*vs.*
their credit's.
the court. The statute authorises us to re-mand a cause, whenever justice, in our opinion, requires it. But the necessity of such a step must be apparent. We cannot deprive a party, from rights acquired in due course of law, to enable his adversary to procure proof, which if it exist, he ought to have sought be-fore; unless we have the strongest reasons to believe the proof exists. Now, in this case, the presumption is the other way; or rather the presumptions are equally balanced. If we presume that Brown communicated to the bank the engagement he had taken, previous to the receipt of their power of attorney, we must also presume they communicated their dis-sent. We have in evidence that the power contained a clause, by which they restricted him from doing any act that might impair their rights on the insolvents. We cannot be-believe that, after marking out such a cause of conduct, they would soon after, have assented to a transaction, destroying those rights.

The receipt by Brown, of seven shillings in the pound, on the claim of the bank, as a divi-dend from the estate of the acceptors, reduces the sum they are entitled to, accordingly.

It is therefore, ordered, adjudged and decreed, that our former judgment, so far as it concerns the *Bank of the United States*, be amended; that the judgment of the parish court against them remain annulled, avoided and reversed; and the opposition of the appellees sustained, so far as it relates to a distribution of the claim of the bank, as now on the tableau; that a deduction of seven shillings sterling in the pound, received by its agent, be made thereon, and the claim of the bank placed on the tableau for the balance, without prejudice to the right of the appellees, on the opposition to the appellants' claim for damages, now pending in the parish court. The appellees paying the costs of the appeal, the appellants those before.

*Hennen* and *Mazureau* for plaintiffs— *Livermore* and *Morse* for Bank of U.S.

Eastern Dist.
*May,* 1829.

KENNER
& AL.
*vs.*
their credit's.

---

The first opinion in this case, was pronounced in April, and was not printed with the cases of that month, on account of a motion for a re-hearing; the second was pronounced in June, and it has been thought best to print it immediately after the other.

In the case of *Hicks, Lawrence & Co.* the date of the acceptance was the *twelfth* of September, and not the fourteenth, as printed.